HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHARON NEWCOMER, et al.,

Plaintiffs,

v.

ROBIN ARNOLD-WILLIAMS, et al.,

Defendants.

Case No. C07-5116 RBL

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT IN PART

## I. INTRODUCTION

THIS MATTER is before the Court on a motion for summary judgment filed by Defendants Robin Arnold-Williams, Department of Social and Health Services, Ross Dawson, and the State of Washington against Plaintiffs Sharon Newcomer, Carolyn Jones-Morrison, Patricia Dettling, and Martha Holliday. [Dkt. # 20.] For reasons explained below, the Court GRANTS Defendants' motion for summary judgment on Plaintiffs' Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), Title VII claims against individuals, and state law emotional distress claims. The Court DENIES Defendants' Motion for Summary Judgment on Plaintiffs' Title VII claims against Defendants DSHS and the State of Washington. Plaintiffs' ADEA, ADA, Title VII claims against Defendants Dawson and Arnold-Williams, and state law emotional distress claims are DISMISSED.

## II. BACKGROUND

Plaintiffs concede the State's Eleventh Amendment immunity on their ADEA and ADA claims. Plaintiffs also concede that the Court has no jurisdiction to hear state law tort emotional distress claims, though this is incorrect[1] and the Court dismisses these claims on other grounds. The facts are set forth in the light most favorable to Plaintiffs.

Plaintiffs Sharon Newcomer, Carolyn Jones-Morrison, Patricia Dettling, and Martha Holliday all are or were employed by the Children's Administration ("Children's") of the Washington State Department of Social and Health Services (DSHS). All Plaintiffs are females over the age of 40 years old. Jones-Morrison is disabled. [Decl. of Jones-Morrison Dkt. # 36 ¶ 10.] Newcomer and Holliday are Native Americans. [Decl. of Newcomer Dkt. # 35 ¶ 1, Decl. of Holliday Dkt. # 37 ¶ 1.] Newcomer was a section supervisor in the Office of Training and Development of Children's.[Decl. of Newcomer Dkt. # 35 ¶ 3-4.] Holliday was employed in Children's Program and Policy Division. [Decl. of Holliday Dkt. # 37 ¶ 2.]

Defendant Robin Arnold-Williams is the chief administrative officer of DSHS, and is responsible for insuring that DSHS complies with applicable federal regulations. [Dkt. # 34.] Defendant Ross Dawson was the Director of Program and Practice Improvement for Children's Administration at DSHS, the division where Plaintiffs were employed, during all relevant time periods. [Decl. of Stephani Dkt. # 31 ¶ 4.] He had the power to hire or fire Children's employees. [Decl. of Hanbey Dkt. # 38 Ex. B.]

Newcomer claims that in May 2005 her supervisor, Bonnie Adams, told her that when preparing training curriculums "non-Indians don't want to hear about" any history of trauma of Indian children taken from their parents. [Decl. of Newcomer Dkt. # 35 ¶ 6.]

In June 2005 Newcomer and Holliday received notice that their positions at Children's had been identified for elimination as part of a Reduction in Force (RIF) and they would be laid off. [Decl. of Newcomer Dkt. # 35 ¶ 3, Decl. of Holliday Dkt. # 37 ¶ 2.] On July 8, 2005 Defendant Dawson was informed by Kammy Haddon, a Diversity Consultant in the DSHS Office of Diversity Affairs, that the RIF of Plaintiffs' positions would result in an adverse impact on Native Americans. [Decl. of Anderson Dkt. # 21 Ex.5.] As a result, under WMS Procedure 5.01 and WAC 356-56-550, Dawson was required to provide a Justification ("Justification") for the RIF of Newcomer and Holliday. [Decl. of Newcomer Dkt. # 35 Ex. B.]

---

[1] *See* 28 U.S.C. § 1367.

ORDER
Page - 2

1  Dawson's Justification stated that the RIF directed him to reduce mid-level managers. *Id*. A review determined that Newcomer's position was one of five supervisors managing fourteen employees, and so was "unnecessary to the overall function." *Id*. Newcomer's duties were disbursed to a Caucasian manager and her position was abolished in November 2005. [Decl. of Newcomer Dkt. # 35 ¶ 10.] Between July and November 2005, Newcomer claims she was removed from the Children's organizational chart, administrative phone lists, and manager listings. *Id*. She also claims she was dis-invited from management meetings she had previously attended. *Id*.

Newcomer was given two options: an informal reassignment to a position she had previously supervised, or a formal "bump" to another position. [Decl. of Hanbey Dkt. # 38 Ex.11-12.] In the formal option, the RIF'd employee "bumps" a less-senior employee and takes the lower position. *Id*. The less-senior employee is in turn removed through the RIF process. *Id*. In this instance, the "bumped" employee would have been Jones-Morrison. *Id*. The formal option also allows the senior employee to appeal the "bump" to a hearing board. *Id*. Newcomer chose to take the formal option in order to preserve her appeal rights, but her RIF-based layoff was rescinded and she was reassigned to a lower position at no loss of salary or benefits. [Decl. of Newcomer Dkt. # 35 Ex. A.]

Dawson's Justification for RIF'ing Holliday's position stated that her position was seen as "less critical to the organization than direct delivery of service to clients." *Id*. Holliday's position was abolished, and she was laid off in November 2005. *Id*. Plaintiffs claim that Holliday's duties were reassigned first to a Caucasian woman, and then to a Caucasian man. [Dkt. # 34.] Plaintiffs also claim that Dawson was not aware of any official guidelines for determining the elimination of their positions, and therefore could not have acted within the official guidelines. [Dkt. # 34.] Defendants argue that Dawson was aware of the guidelines, however, and used them to choose the positions subject to the RIF. [Dkt. # 40.]

The RIF eventually resulted in the elimination of 38 positions at Plaintiffs' workplace, 20 of which were full-time positions. [Dkt. # 34.] All but one Native American employed at Plaintiffs' workplace were removed as a result of the RIF. *Id*. Newcomer claims that she and the only other Native American in her department were subject to the RIF. [Decl. of Newcomer Dkt. # 35 Ex. C.]

Plaintiffs claim that the RIF unfairly targeted older employees, and that Defendants failed to comply with the Age Discrimination in Employment Act (ADEA).[Complaint Dkt. # 1.] Plaintiffs additionally claim

Defendants violated the Americans with Disabilities Act (ADA) in the case of Dettling, and that the RIF resulted in Title VII racially discriminatory disparate treatment and impact to Newcomer and Holliday. *Id*. Plaintiffs also bring state law tort claims for intentional and/or negligent emotional distress. *Id*. Defendants argue that the Eleventh Amendment of the United States Constitution gives immunity from ADEA and ADA claims, and that Plaintiffs cannot bring independent state law emotional distress claims in the context of an employment discrimination claim. [Dkts. # 5, 20.] Defendants further argue that Title VII claims may not be brought against individuals, and Newcomer and Holliday were not subject to Title VII racial discrimination because Defendants had non-discriminatory reasons for their actions. [Dkts. # 5, 20, 40.] Plaintiffs argue that Defendants' articulated reasons for their actions are pretext for racial discrimination. [Dkt. # 34.]

### III. STANDARD OF REVIEW

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party is entitled to summary judgment if, after satisfying its initial burden, the non-moving party fails to present specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable finder of fact could return a decision in the nonmoving party's favor. *Triton Energy*, 68 F.3d at 1220.

### IV. DISCUSSION

**1. Plaintiffs' ADEA and ADA Claims**

Plaintiffs concede that the State has not waived its Eleventh Amendment rights and that Defendants are immune from Age Discrimination in Employment Act and Americans with Disabilities Act claims. [Dkt. # 34.] Plaintiffs' ADEA and ADA claims are DISMISSED.

**2. Plaintiffs' State Law Emotional Distress Claims**

    **a. Plaintiffs' Negligent Infliction of Emotional Distress Claims**

Claims for negligent infliction of emotional distress do not stand alone as a cause of action under state law when the only factual basis for emotional distress is a discrimination claim. *Robel v. Roundup Corp.*, 103 Wn. App. 75, 91, 10 P.3d 1104 (2000). Plaintiffs' negligent infliction of emotional distress claims are therefore DISMISSED.

    **b. Plaintiffs' Outrage Claims**

Plaintiffs claiming intentional infliction of emotional distress, or outrage, must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual severe emotional distress in the plaintiff. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). While this is a question of fact, the court must initially determine if reasonable minds could differ on whether the conduct was sufficiently extreme to create liability. *Hope v. Larry Mkts.*, 108 Wn. App. 185, 196, 29 P.3d 1268 (2001). Outrageous conduct is conduct "which the recitation of the facts to the average member of the community would arouse his resentment and lead him to exclaim, 'outrageous.'" *Id*.

Plaintiffs concede that the Court has no jurisdiction to hear these claims, but this is incorrect. [Dkt. # 34.] The Court has supplemental jurisdiction over "all claims that are so related ... that they form part of the same case or controversy." 28 U.S.C. § 1367. In the instant case, Plaintiffs' state law outrage claim arises from Defendants' alleged Title VII violations.

Nonetheless, Plaintiffs provide no evidence from which a reasonable jury could find that Defendants intentionally or recklessly inflicted extreme and outrageous conduct on Plaintiffs. Plaintiffs' state law outrage claims are insufficient as a matter of law and are DISMISSED.

Plaintiffs Dettling and Jones-Morrison assert only ADEA, ADA, and/or state law emotional distress ADA claims. Accordingly, all claims by these two Plaintiffs are DISMISSED.

**3. Plaintiffs Newcomer and Holliday's Title VII Racial Discrimination Claims**

Plaintiffs Newcomer and Holliday claim that the RIF process resulted in racially discriminatory disparate treatment and disparate impact. [Dkts. # 1, 34.] Defendants argue that Plaintiffs were not treated differently

than similarly situated members outside of their protected class, and were not subject to a racially discriminatory disparate impact as a result of the RIF. [Dkt. # 20.]

As an initial matter, Defendants point out that individuals cannot be liable under Title VII as a matter of law, and seek dismissal of Plaintiff's Title VII claims against Defendants Arnold-Williams and Dawson. *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993); [Dkts. # 20, 40.] Defendants are correct, and Plaintiffs' Title VII claims against Dawson and Arnold-Williams are DISMISSED.

Under the *McDonnell Douglas* framework outlined by the Supreme Court, when a plaintiff brings a Title VII claim based on circumstantial evidence, she must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802 (1973). The burden then shifts to the defendants to "articulate a legitimate, non-discriminatory reason" for their actions. *Id*. The plaintiff must then prove by a preponderance of the evidence that the stated reasons are pretextual. *Id*. at 804.

To establish gender discrimination based on racially discriminatory disparate treatment, the plaintiff must show that (1) she was a member of a protected class, (2) she was qualified for a position or performing satisfactory work, (3) she was subject to an adverse employment decision, and (4) people outside of her protected class were treated better. *Mondero v. Salt River Project*, 400 F.3d 1207, 1211 (9th Cir. 2005). In *Costa v. Desert Palace,* the Ninth Circuit further explained that whether discriminatory intent was the only motive for the disparate treatment or if it was part of a mixture of motives does not change the theory of liability; the plaintiff must still show by a preponderance of the evidence that the adverse employment action was "because of" discrimination. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856-57 (9th Cir. 2002).[2]

A prima facie case for racially discriminatory disparate impact is demonstrated by showing that (1) an outwardly neutral employment practice occurs which (2) has a significantly adverse or disproportionate impact on individuals of a protected class. *Dothard v. Rawlinson*, 433 U.S. 321 (1977). To establish a prima facie case of disparate impact, the Plaintiff does not need to show intent. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). Statistics may be used to demonstrate a disparate impact, but "their usefulness depends on all surrounding facts and circumstances." *Id*. at 338.

---

[2]*See also* Ninth Cir. J. I. 10.1(a).

### a. Plaintiff Newcomer's Disparate Treatment Claim

Sharon Newcomer claims she was subjected to racially-based disparate treatment when she was reassigned from her supervisory position during the RIF because the Justification for eliminating her position was inadequate, and similarly situated Caucasian supervisor Marjorie Fitzgerald was not subject to the RIF. [Dkts. # 1, 34.] Defendants reply that Plaintiff Newcomer fails to establish a prima facie case of discrimination. [Dkts. # 20, 40.] Defendants further argue that even if Plaintiff Newcomer establishes a prima facie case, the Justification given by Dawson was adequate, and Marjorie Fitzgerald was not similarly situated to Newcomer. *Id*.

Newcomer has established a prima facie case of disparate treatment. It is undisputed that Newcomer is a Native American, a protected class, and was subject to an adverse employment action during the RIF. There have been no allegations that Newcomer was performing unsatisfactory work. Defendants argue that Newcomer is unable to meet the third element of a prima face case because there are no similarly situated employees for comparison. [Dkt. # 40.] Newcomer claims, however, that Marjorie Fitzgerald was a similarly situated supervisor who was not subject to the RIF. [Dkt. # 34.] Taking the facts in the light most favorable to Newcomer, she has established a prima facie case.

Defendants have articulated legitimate, non-discriminatory reasons for the abolition of Newcomer's position. [Dkt. # 40.] Dawson wrote on the required Justification that Newcomer's position was subject to the RIF because she was a middle manager and there was a directive to reduce the number of middle managers. [Decl. of Anderson Dkt. # 21 Ex. 5.] Furthermore, Newcomer's position was selected for the RIF over other positions because its functions were deemed unnecessary for the overall function of Children's. *Id*. Newcomer argues that the Justification is inadequate because Dawson neglected to articulate any RIF Justifications particular to Newcomer's position and he was unaware of any guidelines governing the elimination of positions. [Dkt. # 35; Decl. of Anderson Dkt. # 21 Ex. 5.] However, the reasons Dawson gave in his Justification are directly related to Newcomer's position: she was responsible for managing employees that could have been managed by someone else, and her position was not related directly to providing services. *Id*. Additionally, Plaintiffs' evidence that Dawson was unaware of any guidelines when he said he "didn't know" about guiding principles is incomplete. [Dawson Tr. 69: 14-24.]. Plaintiffs fail to acknowledge that Dawson immediately

clarified his answer and discussed the criteria. *Id.* The Court finds that Defendants' reasons are sufficient to meet their burden under the *McDonnell Douglas* framework.

Newcomer argues that Defendants' reasons are pretextual and provides evidence that the abolition of her position did not have any actual impact on one of the major underlying goals of the RIF: to ease budgetary issues. [Decl. of Newcomer Dkt. # 35 Ex. A.] As she did not suffer from any loss of salary or benefits, there was no effect on Children's budget. *Id.* Whether this transfer was enabled by the portion of the budget freed by the RIF of other employees is a question of fact.

Additionally, Newcomer claims that her supervisor, Ms. Adams, expressed animus toward her because of race in the month previous to the RIF notice. [Decl. of Newcomer Dkt. # 35 ¶ 6.] Ms. Adams said that "non-Indians don't want to hear about" historical Indian traumas. *Id.* Newcomer also claims that Ms. Adams repeatedly asked when Newcomer was going to retire, and removed Newcomer from organizational charts, lists, and management meetings before the RIF was implemented. [Decl. of Newcomer Dkt. # 35 ¶ 10.] Defendants dispute that these actions had any relation to Newcomer's race, but this creates an issue of material fact that the Court cannot decide on summary judgment.

Defendants' motion for summary judgment on Newcomer's Title VII disparate treatment claim is therefore DENIED.

**b. Plaintiff Newcomer's Disparate Impact Claim**

Newcomer also claims that Native Americans suffered a racially discriminatory disparate impact as a result of the RIF because 6% of Native Americans were subject to the RIF, but only 0.59% of Caucasians were subject to the RIF. [Dkt. # 34.] Defendants argue that while a greater percentage of Native Americans than Caucasians was affected by the RIF, the difference in size between the groups of employed Native Americans and employed Caucasians means that the removal of any Native American employee has a disproportionally large impact when compared to the removal of multiple Caucasians. [Dkt. # 40.] Defendants further argue that Plaintiffs have not provided appropriate statistical analysis to support their claims. *Id.*

Plaintiffs provide a statistical analysis of all Children's Administration employees in relation to the RIF as evidence of a disparate impact. [Decl. of Newcomer Dkt. # 35 Ex. A.] There were 1247 Caucasian pre-RIF employees and 32 Native American pre-RIF employees at Children's. [Decl. of Anderson Dkt. # 21 Ex. 4.] The fact that the loss of any Native American employee created an adverse impact is not itself indicative of a

Title VII violation. *Id.* Nonetheless, Newcomer provides additional evidence that there were only two Native Americans in her department, and both were targeted by the RIF. [Decl. of Newcomer Dkt. # 35 Ex. C.] The strong impact on Native Americans, in light of surrounding circumstances of the RIF discussed above, establish an issue of fact whether Native Americans in Newcomer's department were adversely impacted by the RIF for discriminatory reasons.

Defendants' motion for summary judgment on Plaintiff Newcomer's disparate impact claim is DENIED.

### c. Plaintiff Holliday's Disparate Treatment Claim

Martha Holliday claims she suffered racially discriminatory disparate treatment by Defendants during the RIF when her position was eliminated in November 2005. [Dkt. # 34.] Defendants respond that Holliday has not established a prima facie case of discrimination. [Dkts. # 20, 40.] Defendants argue that even if Holliday were able to establish a prima facie case, they have articulated legitimate, non-discriminatory reasons for their actions, and she is unable to show that these reasons are pretextual. *Id.*

Holliday has established a prima facie case of disparate treatment. She is a Native American, a protected class. She was subject to an adverse employment action when her position was eliminated during the RIF. There has been no showing that Holliday was performing unsatisfactorily. Defendants argue that Plaintiff Holliday has not established a prima facie case for disparate treatment because she does not show a similarly situated employee outside of her class who was treated more favorably. [Dkt. # 40.] Holliday presents evidence that her duties were directly transferred to similar employees rather than disbursed among dissimilar employees, first to a Caucasian female and then to a Caucasian male. [Decl. of Newcomer Dkt. # 35 ¶ 8.] Defendants dispute that either of these individuals was similarly situated to Holliday, but evidence must be viewed in the light most favorable to Plaintiffs. [Dkt. # 40.]

Defendants have articulated legitimate, non-discriminatory reasons for the abolition of Holliday's position. Dawson stated in the required Justification that Holliday was primarily responsible for Program Manual maintenance as well as associated policies and support, which could be disbursed and administered by the program managers themselves. [Decl. of Anderson Dkt. # 21 Ex. 5.] He further stated that Holliday's position was selected for the RIF over other positions because its functions were seen as less critical to the organization than positions which deliver direct services to clients. *Id.* Holliday argues that Dawson did not

articulate specific reasons for choosing her position and therefore his reasons cannot be legitimate. [Dkt. # 35; Decl. of Anderson Dkt. # 21 Ex. 5.] Dawson's reasons are related to Holliday's position, however. *Id.* She does not provide direct services, and other employees could take over her work. *Id.* Holliday's argument that Dawson was unaware of position elimination guidelines fails for the reasons discussed above regarding Newcomer's similar argument. Defendants have met their burden under the *McDonnell Douglas* test.

Holliday presents evidence that Defendants' reasons are pretextual because her duties were critical to the receipt of funding and meeting federal regulations for Children's, and her duties were not disbursed, but rather transferred to non-protected employees. [Decl. of Holliday Dkt. # 37 ¶ 3; Decl. of Newcomer Dkt. # 35 ¶ 8.] Defendants argue that the Caucasians to whom Holliday's duties were transferred have significantly different positions than that held by Holliday, but this is a factual dispute which must be resolved in favor of the Plaintiff for purposes of this summary judgment motion.[Decl. of Dawson Dkt. # 43 ¶ 4.] Additionally, Newcomer presents evidence that Holliday's supervisor spoke negatively of Holliday a meeting, saying to "be careful, Martha will send it to the Union" and that the process of updating manuals would "take longer because, you know, Martha reads everything."[3] [Decl. of Newcomer Dkt. # 35 ¶ 8.] While the comments themselves are not facially racial, they could be evidence of discriminatory intent taken in light of Plaintiffs' other evidence. Holliday has met her burden on summary judgment.

Defendants' motion for summary judgment on Plaintiff Holliday's Title VII disparate treatment claim is therefore DENIED.

**d. Plaintiff Holliday's Disparate Impact Claim**

Holliday also claims that the RIF had a racially discriminatory disparate impact on Native Americans employed by Children's. For the reasons and evidence discussed above regarding Newcomer's Title VII disparate impact claim, Defendants' motion for summary judgment on Plaintiff Holliday's claim of Title VII disparate impact is similarly DENIED.

---

[3] Defendants argue that Plaintiff Newcomer's evidence here should be excluded as hearsay. This is incorrect. These statements are offered against a party and are "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," and are therefore not hearsay. FRE Rule 801(d)(2)(D).

ORDER
Page - 10

## V. CONCLUSION

Defendants' motion for summary judgment on Plaintiffs' ADEA, ADA, and state law emotional distress claims is GRANTED and those claims are DISMISSED. Defendants' motion for summary judgment on Plaintiffs Newcomer's and Holliday's Title VII claims against Defendants Arnold-Williams and Dawson is also GRANTED and those claims are DISMISSED. Defendants' motion for summary judgment on Plaintiffs Newcomer's and Holliday's Title VII claims against DSHS and the State of Washington is DENIED.

**IT IS SO ORDERED.**

Dated this 3 day of November, 2008.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE